**In re Robert RICHARDS, Debtor.**

**William ROEMELMEYER, Plaintiff,**

**v.**

**CAYMAN AVIATION FINANCE, INC., and Connie Valenti, Defendants.**

**Bankruptcy No. 80–00399–BKC–SMW.**
**Adv. No. 80–0381–BKC–SMW–A.**

United States Bankruptcy Court,
S. D. Florida.

June 23, 1981.

Britton, Cohen, Kaufman, Benson and Schantz, Miami, Fla., for plaintiff.

Bruce M. Boiko, Coral Gables, Fla., for Connie Valenti.

Richard Bernstein, Layne & Brill, P. A., Miami, Fla., for Cayman Aviation Finance Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before this Court upon the Crossclaim of Defendant, Cayman Aviation Finance, Inc., ("Cayman") against Defendant, Connie Valenti ("Valenti"). William Roemelmeyer, Trustee ("the Trustee"), as Plaintiff, having previously commenced this Adversary Proceeding by filing a Complaint against both Cayman and Valenti, settled his claim against both and was

no longer a party at the time of trial. The Court, having heard the Crossclaim asserted by Cayman against Valenti, having heard the testimony of the witnesses, and having examined the evidence presented, observed the candor and demeanor of the witnesses, considered the Memoranda submitted by counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

The Crossclaim asserted by Cayman against Valenti is based on alleged fraud and misrepresentation and on unjust enrichment. Cayman seeks an equitable decree impressing a constructive trust for the benefit of Cayman on Valenti's interest in certain real property. Cayman acquired its claim by a rather circuitous route. Robert Richards, the herein Debtor, is the husband of Valenti, who has kept her maiden name. In August, 1978, P.A. Smith, a long-time friend of Richards, approached Jerry Harvey, also a friend of Smith and an acquaintance of Richards, to obtain a loan for Richards. Harvey testified that between August 1978 and December 1978, he made loan advances to Richards totalling $58,174.00. Harvey further testified that some $10,000.00 of the funds advanced to Richards, were provided by one Peter Stremenos, another friend of Harvey; and that all but $12,000.00 of the $58,174.00 advanced to Richards was intended to be used and was, in fact, used by Richards to purchase a house at 6357 Jack Rabbit Lane, Miami Lakes, Florida ("the House").

Harvey is local agent for Cross-Plaintiff Cayman. After making the loan to Richards, Harvey struck a deal with Cayman, whereby Harvey obtained a promissory note made by Richards in the amount of $50,000.00, which he then sold and assigned to Cayman for $50,000.00 cash. The note was secured by a second mortgage on the House, which Richards executed in February 1979, and which Cayman recorded in April 1979. Harvey also guaranteed the $50,000.00 note assigned to Cayman.

Richards, however, was not the sole owner of the House. At the time of closing, Richards was still in the process of divorc-ing his first wife, who lived in another state. At closing, Richards took title with Valenti as tenants in common. Richards was living with Valenti at the time and later married Valenti, to whom he is still married. Valenti did not, in any fashion, execute the note delivered by Richards to Harvey and assigned to Cayman, nor did she execute the second mortgage on the House, given by Richards to Cayman.

When Richards defaulted on the $50,000.00 note, Cayman foreclosed its mortgage in State Court and obtained title to Richards' interest in the House. Valenti, who was not a party to the State Court foreclosure, remains a tenant in common with Cayman. The value of Richards' interest in the House, however, is apparently insufficient to satisfy Cayman's judgment, so when the Trustee commenced an adversary proceeding against both Cayman and Valenti, Cayman crossclaimed against Valenti, alleging that Richards had promised to take title to the House, solely in his own name. Cayman alleges that when Harvey found out that Valenti was also an owner of record, Valenti, with full knowledge that Harvey was advancing money to Richards to be secured by a second mortgage on the House, several times promised to execute the $50,000.00 note and second mortgage securing it, but later refused to do so.

Valenti, corroborated by Richards' testimony, denies having had any knowledge of the loans by Harvey to Richards until some time after all the advances had been made. By then Valenti and Richards had closed on the House and were living there together. Valenti, who had executed a note held by Peninsula Federal and a purchase money first mortgage securing it, denies having agreed to execute the $50,000.00 note or the second mortgage. Valenti further testified that she had contributed roughly $5,000.00 to the down payment on the House; and that she had paid several monthly mortgage payments to Peninsula Federal, using her own funds, introducing in evidence checks drawn on her personal account to prove such payments.

■ On the relevant facts and contentions summarized above, Cayman, as succes-

sor in interest to Harvey and as holder of the $50,000.00 note and second mortgage, seeks to subject Valenti's interest in the House as a tenant in common to a constructive trust for its benefit. A constructive trust is a traditional remedy which equity affords in order to effectuate justice. It is appropriate for a Court of equity to impose a constructive trust on property, where one, through fraud, abuse of confidence, or other questionable means, gains property, which in equity or good conscience, he should not be permitted to retain, or, in appropriate circumstances, to prevent unjust enrichment. *See, e.g., Hallam v. Gladman*, 132 So.2d 198 (Fla.App.1961).

This Court has carefully reviewed the record and weighed the evidence as it bears on the conduct of the Cross-Defendant, Valenti, and finds no showing by clear and convincing proof, nor even by preponderance of the evidence, of any fraud or misrepresentation on her part. Whether or not Richards defrauded Cayman is not here at issue. Cayman has already foreclosed its lien on Richards' interest and it is Valenti, not Richards, against whom Cayman is here proceeding. The evidence, however, does not establish Valenti's complicity in the alleged fraud and misrepresentation by Richards, and Cayman has failed to establish any fraud, unconscionable conduct, artifice, concealment, or obtaining property by questionable means on the part of Valenti.

Cayman has also failed to show that Valenti would be unjustly enriched by allowing her to retain her interest in the House as tenant in common. Valenti's testimony that she contributed a substantial sum to the down payment on the House and made various mortgage payments to Peninsula Federal from her own funds is uncontroverted. Moreover, Valenti's execution as co-maker of the Peninsula Federal note is manifestly additional consideration for her interest in the House.

Valenti clearly gave substantial consideration for her interest in the House, and did not execute the $50,000.00 note or the second mortgage. Absent a clear showing that Valenti falsely represented her inten-

tion to subject her interest in the House to the second mortgage, or that she acted in complicity with Richards in some form of inequitable conduct, there is no basis for this Court to invoke its equitable power to impress a constructive trust on her interest in the House. Accordingly, without determining the extent of the respective interests of the parties in the House, this Court will deny Cayman equitable relief, dismiss Cayman's Crossclaim against Valenti with prejudice, and leave the parties in status quo with each party to bear its own costs.